**Glen D. CLARK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 281S46.**

Supreme Court of Indiana.

June 29, 1982.

William B. Bryan, Angola, for appellant.

Linley E. Pearson, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is an appeal from a conviction for attempted murder, a class A felony, Ind. Code Ann. § 35–41–5–1 (Burns 1979), and Ind.Code Ann. § 35–42–1–1 (Burns 1979). Defendant-appellant was sentenced to imprisonment for forty years. He raises three issues on appeal: (1) whether a certain neurological test violated rights secured by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; (2) whether State's Exhibit No. 7, the results of a blood-typing test, was inadmissible hearsay and violated defendant's Sixth Amendment rights; (3) whether the sentence of forty years' imprisonment was improper because based on a pre-sentence report that violated defendant's Sixth Amendment rights and Indiana statutory requirements.

### I.

Defendant filed what was captioned a motion in limine, but what was in substance a motion to suppress, aimed at precluding the State from presenting any evidence based on a neurological examination conducted by Dr. Romain. The test was ordered by the trial court upon the State's request, after the defendant interposed the defense of insanity based on his contention that he committed the act while in the grip of a blackout brought on by psychomotor epilepsy. This order was within the inherent authority of the trial court to guide and control the proceedings. *Spears v. State*, (1980) Ind., 403 N.E.2d 828. Although defense counsel stipulated that the defense had no objection to the procedure, the defendant now argues that since the test was not limited to the use of external electrodes attached to the scalp, as he expected, he did not consent to the electroencephalogram (EEG) procedure as administered, which involved the insertion of electrodes through the nasopharyngeal passages and caused him great pain. He also argues that the EEG procedure went beyond the permissible scope of a psychiatric examination and was a test to determine his guilt or inno-

cence based on his own testimony, in violation of his Fifth Amendment privilege against self-incrimination, and his Fourth Amendment right to be free from unreasonable searches and seizures. Moreover, he argues, even if the use of the results of an EEG through the use of *external* electrodes is not a violation of the Fourth and Fifth Amendments, the results of an EEG using nasopharyngeal electrodes is such a violation, as well as a violation of the Fourteenth Amendment right to due process.

The claim that the defendant did not consent to the nasopharyngeal procedure and that it caused him great pain was made through an offer to prove, permitted by the trial court and not objected to by the State, in which defense counsel asserted that the defendant would testify that he felt great pain and protested at the time that he would not have taken the test, had he known that insertion of electrodes through the nasopharyngeal passage was involved. The offer to prove also included the assertion that the technician who administered the test would testify that the electrodes were on eight-inch long filaments, that the defendant said that the insertion caused him pain, and that the procedure was not a standard one but "a special test afforded extra."

The trial court ruled that the evidence was admissible. Dr. Romain then testified that the EEG revealed that the defendant did not suffer from psychomotor epilepsy.

We need not address the various arguments defendant has marshalled against the admissibility of the neurological examination, because they are based on the unsupported assertion in his brief that he did not consent to the procedure. The substance of the offers to prove in no way vitiated the consent indicated by the defense to the State's request for an order requiring the defendant to submit to a neurological examination. The offers to prove asserted nothing more than that, had the defendant known that nasopharyngeal electrodes would be inserted, he would not have consented. Neither the offer to prove what defendant's testimony would have been, nor

the offer to prove what the technician's testimony would have been, contained assertions that the defendant actually protested the procedure. We therefore do no pass on the question of whether the procedure, if conducted over a defendant's actual request that it be halted, would offend the concept of due process, as a compulsory stomach pumping procedure to gather evidence did in *Rochin v. California*, (1953) 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, or was a permissible intrusion under the Fourth Amendment, as was a compulsory drawing of a defendant's blood in *Schmerber v. California*, (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. Neither do we pass on the question of whether a defendant's lack of consent would be relevant in determining admissibility.

We note in passing, however that there is no merit to the claim that the use of evidence gathered from the use of nasopharyngeal electrodes constituted use of "testimonial" or "communicative" evidence in violation of the privilege against self-incrimination secured by the Fifth Amendment to the United States Constitution. Defendant urges that the procedure amounted to an effort by the State to compel responses that were essentially "testimonial" or "communicative", as in the case of a polygraph test. The privilege does not extend to the compulsory submission to purely physical tests, such as blood samples, fingerprinting, and voice exemplars, *Allen v. State*, (1981) Ind., 428 N.E.2d 1237; *Frances v. State*, (1974) 262 Ind. 353, 316 N.E.2d 364. Certainly the evidence obtained does communicate some information, but not in the sense contemplated by the privilege and its limits. See *Schmerber v. California, supra*, 384 U.S. at 759, n. 5, 86 S.Ct. at 1830-31.

II.

Over defendant's objection, the State introduced Exhibit No. 7, the report of Indiana State Police Technician Goetz on the type of blood found on State's Exhibit No. 5, the knife purportedly used by defendant in the attempted murder. Defendant con-

tends that the report was inadmissible hearsay because it was neither a public record covered under the provisions of Ind.Code Ann. § 34–1–17–7, nor a business record. Even if it was admissible under either of these exceptions, he contends, such exceptions should not be permitted in a criminal trial because they would deprive an accused of his Sixth Amendment right to confront witnesses against him. Defendant concedes that autopsy reports are public records within the meaning of the statute, *Thompson v. State*, (1979) Ind., 386 N.E.2d 682; *Collins v. State*, (1977) 267 Ind. 233, 369 N.E.2d 422; *Starkey v. State*, (1977) 266 Ind. 184, 361 N.E.2d 902, but distinguishes laboratory reports of the type at issue here from autopsy reports because the latter are required by statute, Ind.Code Ann. § 17–3–17–4 (Burns 1974) (repealed), while there is no equivalent requirement for the former. He also argues that the laboratory report was inadmissible because it was prepared in anticipation of litigation, citing *Palmer v. Hoffman*, (1943) 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645.

Concerning defendant's distinction between autopsy reports and the kind of laboratory report at issue here, we do not find the point persuasive. The public records exception to the hearsay rule permits records prepared by an official pursuant to statutory command or required by the nature of the office, to be admitted as evidence, if properly certified or authenticated. Ind.Code Ann. § 34–1–17–7 (Burns 1973); *Coffey v. Wininger*, (1973) 156 Ind.App. 233, 296 N.E.2d 154. Concerning defendant's reliance on *Palmer v. Hoffman, supra,* that case involved an accident report made by the engineer-employee of the defendant as trustee of a railroad company. The Supreme Court held that an accident report was not in the category of statements made in the ordinary course of business for the purpose of admissibility as an exception to the hearsay rule, because it did not share the essential trustworthiness of such records, and was calculated for use essentially in court, not in the business. The accident record was prepared by a party directly interested in the outcome of a civil trial.

We cannot say that Indiana State Police Technician Goetz in typing blood had an interest in the outcome of a criminal trial. The *Palmer* Court, moreover, relied upon a federal statute creating a hearsay rule exception for private business records, while the report at issue was a public record governed by our own statute, *supra.*

Defendant further contends that even if the laboratory report does qualify as a public record or business record exception, such an exception should not be allowed in a criminal trial because it deprives an accused of his constitutional right to confront witnesses against him. We have held that the "right to the confrontation of witnesses does not require that no hearsay may be introduced at trial. *Dutton v. Evans*, (1970) 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213." *Collins v. State*, (1977) 267 Ind. 233, 236, 369 N.E.2d 422, 423 (Coroner's report held properly admitted.).

### III.

The defendant filed two motions to strike material included in the pre-sentence report. One motion was aimed at excluding a letter from Dr. Romain to the prosecuting attorney reporting on his conclusions following his interview with the defendant and the EEG. Dr. Romain's opinion was that the defendant did not suffer from a seizure disorder of a psychomotor or any other type. The other motion was aimed at excluding references to past dismissals of criminal charges against the defendant. Both motions were denied.

Defendant argues that Dr. Romain's letter was improperly considered because it was the fruit of evidence illegally obtained. Defendant also argues that Ind.Code Ann. § 35–50–1A–11 (Burns 1979), the statute providing for court-ordered physical and mental examinations in a designated facility as part of the pre-sentence investigation, mandates that such a pre-sentence examination be conducted without reference to previous evaluations or judgments such as Dr. Romain's.

Finally, he argues that the inclusion of the letter violates the confidentiality requirement regarding pre-sentence reports provided in Ind.Code Ann. § 35–50–1A–14 (Burns 1979).

Defendant's motion to strike Dr. Romain's letter was premised only on the claim that it had been provided to the reception-diagnostic center without having been requested by the trial court. On appeal, however, he raises new claims not preserved, and therefore not available for review.

Regarding the motion to strike references to past dismissals of criminal charges, the issue has been resolved against defendant in *Misenheimer v. State*, (1978) 268 Ind. 274, 374 N.E.2d 523. Defendant relies on *McNew v. State*, (1979) Ind., 391 N.E.2d 607, in support of his claim, but that case held that a sentencing judge may not consider a previous acquittal as an aggravating circumstance, and is not apropos.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.