Leon KING, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 185S5.

Supreme Court of Indiana.

June 12, 1987.

Diane McNeal, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

A jury found appellant guilty of murder and he received a sentence of forty-five years. This is a direct appeal stemming from that conviction.

There are six issues presented for review: (1) whether the trial court erred in permitting evidence concerning appellant's prior acts of misconduct; (2) whether the trial court erred in denying appellant's motion for mistrial when one of the court appointed psychiatrists changed his opinion mid-trial; (3) whether the trial court erred in denying appellant's motion for a directed verdict and whether the evidence was sufficient to sustain a murder conviction; (4) whether the trial court erred by permitting hearsay testimony; (5) whether the trial

court erred in permitting the prosecutor to ask leading questions of State's witness David Anderson; and (6) whether the trial court erred in replacing juror No. 4 with an alternate juror.

These are the facts from the record which tend to support the determination of guilt: Appellant and Katherine Anderson had lived together for several years and he had fathered three of her eight children. On September 30, 1983, appellant kicked in the door of Anderson's residence and he and his clothing were subsequently removed from the residence by police at Anderson's request. Appellant returned within twenty minutes and stabbed Anderson in the forehead with a pair of tweezers. On October 4, 1983, at approximately 5:00 a.m. two of Anderson's children were awakened by breaking glass and the front door being broken down. David, age 12, observed appellant come in the front door and his mother run toward the back door. She called his sister's name and begged appellant not to treat her badly. David heard appellant reply "I told you I'm going to get you." Sharon, age 15, saw her mother run toward the back door and appellant chase her. She also heard appellant threaten her mother.

Katherine Anderson's body was found in a nearby alley about 7:00 a.m. that morning by a neighbor. She died as a result of stab wounds. Neither her money nor jewelry was missing and blood was found at the back of her house.

Appellant filed a notice of insanity defense prior to trial. Three court appointed psychiatrists examined appellant and one, Dr. Wigutow, found appellant insane but later changed his opinion during the trial to reflect sanity. The two other psychiatrists found appellant was sane at the time of commission of the crime.

## I

The trial court permitted four witnesses to testify concerning prior assaults upon Anderson by appellant. Appellant urges that the introduction of these incidents was improper evidence relating to prior acts of misconduct.

The testimony elicited from the four witnesses comprised the following: (1) that on March 16, 1983, Katherine Anderson filed a complaint charging appellant with beating her on March 15, 1983; and (2) that on September 30, 1983, appellant kicked in the door at Anderson's home and was removed, along with his clothing, by police, but returned within twenty minutes and stabbed Anderson in the forehead with tweezers.

While prior acts of misconduct are generally inadmissible, proof of a defendant's prior assault or battery upon, or threats made to, a homicide victim are admissible to show motive or intent. *Romine v. State* (1983), Ind., 455 N.E.2d 911; *Moore v. State* (1981), 275 Ind. 39, 414 N.E.2d 558; *Greer v. State* (1969), 252 Ind. 20, 245 N.E.2d 158. Further, when the insanity defense is imposed, past behavior of the defendant can be admissible to negate that defense. *Smith v. State* (1982), Ind., 432 N.E.2d 1363.

The testimony of these witnesses revealed prior attacks by appellant upon Anderson and the admission of this evidence was not improper, even though it dealt with prior acts of misconduct.

## II

Dr. Wigutow, one of the court appointed psychiatrists, initially submitted a report indicating he believed appellant was insane at the time of commission of the crime. Near the close of the State's case, Dr. Wigutow, after reexamining appellant, notified the court he was changing his opinion and now believed appellant was sane at the time of commission of the crime.

Appellant moved for a mistrial asserting prejudice and grave peril arising from Wigutow's changed opinion. In support of his motion, he argued that he had built his entire insanity defense around Wigutow's first opinion and therefore the change left him with no support for his defense.

While mindful of the precarious position defense counsel found himself in as a result of Wigutow's action, he still retained the benefit of Wigutow's prior opinion of

**1262**

insanity to support his defense. Further, the circumstances of this crime reflect a high degree of emotional upset which could also be viewed as favorable to appellant's defense.

■ A mistrial is an extreme remedy which should only be granted when nothing else will rectify the situation. *Watkins v. State* (1983), Ind., 446 N.E.2d 949. Appellant was not placed in a position of grave peril by the change of opinion by Wigutow. The opinion of a psychiatrist is just that, merely an opinion, and it is that which underlies the opinion which is subject to evaluation. Through cross-examination, the jury knew of the prior opinion and the recent change. They did not have to concur in Wigutow's analysis. They had the material before them and could evaluate it for themselves. There was no error in the denial of appellant's motion for mistrial.

### III

Appellant also appeals from the denial of his motion for a directed verdict alleging insufficiency of the evidence. In support, he asserts that there was no evidence that he killed knowingly and intentionally.

"The Court will not weigh the evidence nor judge the credibility of the witnesses. Rather, we will consider only that evidence most favorable to the State and all reasonable inferences to be drawn therefrom which support the verdict. If there is substantial evidence of probative value which would permit a reasonable trier of fact to find the existence of each element of the offense beyond a reasonable doubt the judgment must be affirmed." *Bowen v. State* (1985), Ind., 478 N.E.2d 44.

■ While no one actually witnessed Anderson's murder, strong circumstantial evidence supports the conclusion that appellant was the perpetrator and a guilty verdict may be based on circumstantial evidence. *McAfee v. State* (1984), Ind., 459 N.E.2d 1186; *Thompson v. State* (1982), Ind., 441 N.E.2d 192. Here, two of Anderson's children heard the house being broken into, observed appellant enter the house and chase their mother, heard him threaten to harm her, and blood was found near the back door of the house. Further, the element of intent required for a murder conviction may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *Johnson v. State* (1983), Ind., 455 N.E.2d 932; *Clay v. State* (1982), Ind., 440 N.E.2d 466; *Maxwell v. State* (1970), 254 Ind. 490, 260 N.E.2d 787. Anderson sustained numerous lacerations made with a sharp instrument and died as a result. Given the evidence presented, the jury could logically have inferred that appellant knowingly and intentionally killed Anderson.

### IV

The next issue presented for review is whether the trial court erred by permitting the hearsay testimony of Officer DeMichaele. He was permitted to relate what Katherine Anderson told him about the assault by appellant on September 30, 1983. The trial court found the testimony to be hearsay but allowed it under the excited utterance exception to the hearsay rule.

DeMichaele testified that when he arrived a group of people were gathered and Anderson had a laceration to her forehead, her head was bleeding, and there was blood on her blouse. Anderson was visibly upset and told DeMichaele that Leon King came back in the house and he stabbed her with a pair of tweezers in the forehead. DeMichaele also testified that Officer Johnson answered a call at the same residence twenty minutes earlier.

In *Corder v. State* (1984), Ind., 467 N.E.2d 409, we found:

"There are two basic requirements that must be established before the [excited utterance] exception applies. First, there must be a startling or exciting event that renders reflective thought inoperative. Second, the statement must be the spontaneous result of the event and not the result of reflective thought."

■ The events here support the application of the excited utterance exception to the hearsay rule. Appellant had broken down Anderson's door, been removed by the police, and returned within twenty min-

utes and stabbed Anderson in the forehead. The indicia of reliability under these circumstances is strong. Anderson was still bleeding and was visibly upset, plus the lapse of time between when officers first removed appellant and DeMichaele's arrival was very short.

 Further, David Anderson and Bessie Baker had already testified about the incident and the fact appellant had stabbed Anderson. DeMichaele's testimony was merely cumulative and even if improperly admitted, would not warrant reversal.

### V

Appellant asserts the trial court erred by permitting the prosecution to ask twelve year old David Anderson an excessive number of leading questions. The prosecutor asked questions such as "What would be here?", "Who else was with you?" and "What could you see?"

> "Although it is normally inappropriate to utilize leading questions in the direct examination of a witness, a trial court may, in its discretion, permit the use of such questions. A trial courts determination in this regard is reviewable on appeal only for an abuse of that discretion. In the case at bar, the leading questions permitted by the trial court were carefully phrased by the prosecutor so as to put these young witnesses at ease and coherently elicit their testimony. A careful review of the record discloses no attempt by the prosecutor to control the substance of their testimony." [citation omitted]

*Borosh v. State* (1975), 166 Ind.App. 378, 336 N.E.2d 409.

 In the instant case, the prosecutor's questions did not call for yes or no answers nor were they determinitive of David Anderson's responses. When a child is a witness, it is permissible for the trial court to allow leading questions, given the varying degrees of comprehension of young people. The trial judge is best able to determine the capabilities of the witness and his decision to permit a certain manner of questioning will not be overturned absent a clear showing of prejudicial error. The prosecutor's questions were carefully structured to assist David in relating the events which occurred more than eight months before and resulted in the death of his mother. Appellant has shown no prejudice resulting from the allowance of leading questions.

### VI

Juror No. 4 had planned a vacation to New Orleans and expected the trial to end prior to his scheduled departure. When he realized his jury duty would not be completed by that time, he informed the judge of the vacation and his belief that if he were forced to miss the trip, it would adversely affect his jury service. The trial judge excused juror No. 4 and replaced him with an alternate.

Appellant objected to the substitution and proposes that the alternate would not have paid as close attention to the evidence and the alternate's seating thereby prejudiced him.

In a recent decision, we emphasized that the substitution of a regular juror with an alternate does not support a claim of prejudice.

> "Alternate jurors are selected in the same manner as regular jurors, have the same qualifications, are subject to the same examination and challenges, and take the same oath and are prepared at all times to replace a regular juror. Thus both regular jurors and alternate jurors are purified by the same process and the integrity of the jury is maintained whether a regular or an alternate juror serves on the jury during the course of the trial." [citation omitted] *Whitehead v. State* (1986), Ind., 500 N.E.2d 149. [quoting *Landers v. State* (1975), 165 Ind.App. 221, 331 N.E.2d 770.]

 The substitution of an alternate juror for a regular juror is permissible and there was no error committed by excusing juror No. 4.

The conviction is affirmed.

SHEPARD, C.J., and GIVAN, PIVARNIK and DICKSON, JJ., concur.