Larry D. FOX, Sr. Appellant,

v.

STATE of Indiana, Appellee.

No. 72S00–8811–CR–907.

Supreme Court of Indiana.

Oct. 11, 1990.

Russell A. Johnson, Jones Loveall and Johnson, Franklin, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Roger L. Duvall, Pros. Atty. of Scott County, Scottsburg, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder for which he was sentenced for forty (40) years.

The facts are: On March 29, 1986, appellant and his girl friend Joyce Beyers, the victim, arrived at Steven Manlief's home to prepare a boat for an outing on Hardy Lake in Scott County, Indiana. After Manlief showed appellant and Joyce Beyers how to operate the boat, he left to pick up his date to go boating with appellant and Beyers. However, upon their arrival at the lake, Manlief's date indicated she was afraid of the water and did not wish to go boating. Thereafter appellant and Beyers proceeded to go boating by themselves.

At approximately 8:00 p.m., Mr. and Mrs. Meeks, who lived about one-fourth mile from the lake, heard a woman scream three times followed by a man's voice in despair. The Meeks noticed a boat with a spotlight looking for something in the water and called the Sheriff. Another couple, James and Beth Shelton, were fishing on the shore of Lake Hardy and heard the man's cries. They also called the Sheriff. Another group of people were Chris and Gary Schmelzle, their son, and another couple Mike and Joan Cathcart. They also heard a man crying and saw a boat circling in the water looking for something.

Appellant gave a statement to the police as to what happened. The police searched for the body without success. Appellant also gave a written statement to the police the following day. In these statements, appellant indicated that while he was driving the boat, he heard a woman yell and turned around to find Beyers missing from the rear of the boat. Appellant stated that he turned the boat around and returned at a high rate of speed and started searching for her. He jumped into the water to search but to no avail. Appellant indicated that he searched for approximately an hour without success and thereafter scattered life preservers around the area and went for help.

The body of Joyce Beyers was recovered on April 26, 1986 and taken immediately to Indianapolis for an autopsy by Dr. John Pless. Her clothing was neat with her shirttail tucked in and her shoes were still intact. An autopsy performed by Dr. Pless revealed that on the back of the victim's head there were two injuries adjacent to both sides of older lacerations which were contusions inflicted by blunt force. There also were multiple contusions on her right arm and on both legs, the lungs were relatively light with very little fluid in them, and she had a blood alcohol content of .06. Dr. Pless was of the opinion that the contusions were from a blunt force which could have caused unconsciousness. In addition, he said that these injuries could have been inflicted in or out of the water and before or after unconsciousness. Dr. Pless did not find anything in his examination which indicated a natural cause of death. He concluded that the victim's cause of death

was asphyxia due to drowning but could not determine the manner of the death.

Appellant contends the trial court erred in allowing the State to present into evidence Exhibit 14. This exhibit was a temporary protective order which was not in effect on the date of the offense. The order states that it is against Larry D. Fox, Jr., whereas appellant is Larry D. Fox, Sr.

At trial no issue was made of the fact the document referred to Larry D. Fox, Jr. rather than Sr. An examination of the record discloses that Jr. at the time of trial was a fifteen-year-old boy who was the son of appellant and the decedent. It is clear from the argument presented to the trial court that the parties knew the order was issued against appellant. At trial, all presumed the Jr./Sr. identification to be a scrivener's error. We see no merit to appellant's attempt to raise this issue on appeal.

Appellant contends this exhibit procured by the victim against him approximately six weeks before the crime lacked probative value for its admission. The State maintained that the purpose of the exhibit was to indicate a possible motive on behalf of appellant. The jury was informed that the order was not in effect at the time of the offense, but was another piece of evidence for them to consider.

■ Appellant also claims the exhibit was hearsay. This Court has long recognized the public records exception to the hearsay rule which permits records prepared by an official pursuant to statutory authority or required by the nature of the office to be admitted as evidence, if properly certified or authenticated. Ind.Code § 34–1–17–7; *Clark v. State* (1982), Ind., 436 N.E.2d 779. The record here discloses that the order and notice were properly certified and therefore qualified as an exception to the hearsay rule.

■ As to the relevance of the document, evidence of motive is relevant in the proof of a crime. *Halbig v. State* (1988), Ind., 525 N.E.2d 288. The admission of evidence having a tendency to create an inference of motive is within the trial court's discretion. *Id.* Likewise, all circumstances relative to or tending to shed light on the intent or motive of a defendant or tending fairly to explain his actions are admissible even though they occurred prior to the crime. *Hart v. State* (1978), 268 Ind. 358, 375 N.E.2d 221. In the case at bar, the trial judge did not abuse his discretion in admitting Exhibit 14.

■ Appellant contends the trial court erred in allowing the State to present evidence of an alleged incident occurring approximately six months prior to the crime in question.

State's witness, Ronald Abner, described a date he had with the victim a few months prior to her death. He described how appellant entered the decedent's home without knocking, asked him to leave, and then threw the decedent to the floor.

■ While prior acts of misconduct are generally inadmissible, proof of a defendant's prior assault or battery upon, or threats made to, a homicide victim are admissible to show motive or intent. *King v. State* (1987), Ind., 508 N.E.2d 1259. The State cites *Johnson v. State* (1989), Ind. App., 544 N.E.2d 164, *trsf. denied* and acknowledges that the admission of this testimony to show intent or motive may have been error in light of the *Johnson* decision. In *Johnson*, the Court of Appeals stated:

"In the present case, Johnson's prior acts of violence have a single nexus—albeit an important nexus—the victim, Florence Stokes. But the earlier crimes are not tangibly connected to each other or to the present crimes. They are not unusual, distinctive, or similar to each other or to the present beating, abduction, and threat in any way.

Nothing indicates Johnson's crimes arose out of a common plan or scheme. Instead, it would appear that they all arose out of separate, distinct crisis situations in the on-going saga of Johnson's and Stokes's "off and on" romantic relationship. All the incidents are separated by significant periods of time.

\* \* \* \* \* \*

Today, we will not allow evidence that Johnson has the propensity to beat Stokes to prove a present beating." *Id.* at 170–71.

In *Johnson*, the defendant was being prosecuted for a specific assault on the victim, who gave direct evidence concerning that assault. This was not a case where it was necessary to establish the *corpus delicti* by circumstantial evidence which would bring into play the defendant's motive or scheme or plan. The case at bar more nearly parallels the situation found in *King, supra.* There the defendant had been charged with homicide of the victim and it became necessary to establish the motive or intent. This Court held that under those circumstances it was proper to show prior attacks upon the victim. In addition, we note that although appellant did unsuccessfully seek a pretrial motion in limine, he did not object when Abner was questioned as to the prior attack. Appellant thereby waived his right with regard to Abner's testimony. *Mason v. State* (1989), Ind., 539 N.E.2d 468. We find no error in the admission of the evidence.

Appellant contends the trial court committed fundamental error in failing to admonish the jury or remedy prejudice caused by prosecutorial misconduct in referring to appellant's failure to testify and misquoting evidence. Fundamental error is error that if not corrected would deny a defendant fundamental due process. *See Haymaker v. State* (1988), Ind., 528 N.E.2d 83.

 In determining whether a prosecutor in a criminal case has engaged in prosecutorial misconduct, the court looks at the following factors:

1. The Court first determines whether such misconduct occurred.

2. The Court then considers whether the misconduct, under all the circumstances placed the defendant in a position of grave peril to which he should not have been subjected.

3. Whether the misconduct results in subjecting the defendant to grave peril is determined by the probable persuasive effect of the misconduct on the jury's decision and not by the degree of impropriety of the conduct.

4. Finally, a situation of repeated instances evidencing a deliberate attempt to improperly prejudice the defendant may require a reversal. *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843.

In his opening statement, the prosecutor stated:

"[A]nd the fact remains that come that evening of the 29th there were two people on the boat, Larry Fox and Joyce Beyers. Two people, and as I stand before you today ... there are only two people who can recite the words that were spoken, who can tell you the sights the eyes saw on that boat on that evening, only two people, one of them stands here today charged with murder, and the other has been dead almost two years."

In support of appellant's position, he relies on *United States v. Wilkerson* (5th Cir. 1976), 534 F.2d 43. In *Wilkerson*, the prosecutor referred to the two defendants in the case, who did not testify, as being the only persons who could tell the jury the facts involved. Although the Federal Court held these comments to be improper, they nevertheless held that within the "four corners of this case we appraise the comment to have been harmless beyond a reasonable doubt." *Id.* at 44.

We find appellant's reliance on *Wilkerson* is misplaced and that the comments made by the prosecutor in the instant case during opening statements did not amount to prosecutorial misconduct resulting in fundamental error.

 Appellant also claims the prosecutor made a similar comment during closing argument when he referred to the duty of law enforcement officers to apprehend and aid in the conviction of criminals and that the State had an obligation to present the evidence in a truthful fashion. However, he stated that defense counsel need present nothing even if he knows what the truth is. Appellant's counsel objected immediately, and the court admonished the jury that appellant had an absolute right not to testi-

fy. This statement made by the prosecuting attorney has been accepted by this Court. *See Johnson v. State* (1985), Ind., 475 N.E.2d 17 and *Hubbard v. State* (1974), 262 Ind. 176, 313 N.E.2d 346. We cannot say that either comment was error which denied appellant a fair trial.

■ Appellant contends the statements made in closing argument misrepresented the testimony that was actually given. During opening statements, the prosecuting attorney stated that Dr. Pless, the examining physician, would testify that the decedent was probably unconscious when she went into the water. On final summation to the jury, the prosecutor stated that the autopsy showed the victim's lungs did not contain much water; thus in all probability, the victim was unconscious when she entered the water. Dr. Pless's testimony was that he had examined several drowning victims who were conscious when they entered the water and their lungs were full of water. He also testified that the victim in this case did not have much water in her lungs. We cannot say that the prosecutor misrepresented the evidence in his summation to the jury.

Appellant argues other instances of misrepresentation on the part of the prosecutor. These include the speed of the boat, comments on the decedent's clothing, and comments regarding the credibility of witnesses. In reviewing the record concerning the alleged misconduct of the prosecutor, we find no error let alone fundamental error. *See Maldonado, supra.*

■ Appellant contends the trial court erred in denying his amended motion to correct error concerning evidence given to jurors outside the presence of the trial court.

In *Currin v. State* (1986), Ind., 497 N.E.2d 1045, this Court stated:

"Defendant contends that the extrajudicial contact was presumptively prejudicial, and that the State failed to sufficiently rebut that presumption. While a rebuttable presumption of prejudice arises from juror misconduct involving out-of-court communications with unauthorized persons, *Conrad v. Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546, such misconduct must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter pending before the jury. *See, Fox v. State* (1984), Ind., 457 N.E.2d 1088; *Oldham v. State* (1967), 249 Ind. 301, 304–305, 231 N.E.2d 791, 793; *Brown v. State* (1964), 245 Ind. 604, 607, 201 N.E.2d 281, 283; *Myers v. State* (1960), 240 Ind. 641, 646, 168 N.E.2d 220, 223; *Barker v. State* (1958), 238 Ind. 271, 278, 150 N.E.2d 680, 683–684; *York v. State* (1978), 177 Ind.App. 568, 380 N.E.2d 1255. Where there is a factual conflict regarding the existence or content of extra-judicial juror contact, it is within the discretion of the trial court to determine whether the evidence presented showed any irregularity. *Reed v. State* (1985), Ind., 479 N.E.2d 1248." *Id.* at 1046.

Appellant attempted to support his claim with affidavits from three different persons who stated they were present during the trial and that they observed members of the victim's family talking with a juror while the court was in recess. Two of the affiants did not claim to hear the content of the conversation. However, the third affiant stated that he heard a member of the victim's family tell a juror that he knew appellant was guilty, that he had beaten the victim and treated her "like hell," and that he had shot at two men. None of the three affidavits tells who the juror was or describes the juror in any way.

Appellant contends that because the State did not negate the accusations, then these accusations must be accepted. The State did present evidence that ten of the twelve jurors denied the accusations and heard nothing from other jurors. Appellant contends that because the State did not present affidavits of all jurors from the trial there exists the possibility that one of the two jurors did speak with the Beyers family member. The rule in *Currin* assigns to the discretion of the trial court the initial determination concerning whether there was any irregularity and whether it affected the trial. In light of the absence

of any description of the juror allegedly involved and the affidavits of ten jurors indicating they knew nothing of the event, we conclude the trial court was justified in deciding that there was no reason to grant a new trial.

Appellant contends the trial court abused its discretion in denying his request for a new trial based upon newly-discovered evidence.

Appellant presented the affidavits and testimony of two persons possessing newly discovered evidence. These individuals were Larry Fox, Jr., the appellant's son and the son of the victim, and Ray Davis. Larry Fox, Jr. claimed to have knowledge that on the day of her death his mother hit the back of her head and fell while attempting to put the doors on the jeep, thereby explaining the bruises on the back of her head. Davis testified he witnessed a person leave the rear of a boat and the person remaining in the boat brought the boat around.

▆▆▆▆ For newly-discovered evidence to warrant a new trial, it must be shown that it will probably produce a different result. *Wilson v. State* (1987), Ind., 511 N.E.2d 1014. Larry Fox, Jr. did not see his mother fall, he did not identify the precise location of her injury except to say that she was holding the back of her head, and the victim did not complain of any injury to other family members. In addition, Fox's affidavit does not eliminate the possibility that the second bruise found on the back of the victim's head was caused by appellant. Ray Davis was unable to identify whether the person who left the rear of the boat was a man or woman, was unable to identify the boat, and was unable to identify the persons on the boat. Because Davis could not make such identification, the value of his testimony would depend upon whether the boat that Davis saw was in fact appellant's boat and whether the person who went overboard was the victim. We fail to find how the testimony of these two individuals would have produced a different result. We find no error.

Appellant contends there was insufficient evidence to sustain the verdict. The weighing of evidence is the prerogative of the jury not this Court. *Butler v. State* (1989), Ind., 547 N.E.2d 270.

▆▆▆▆ Circumstantial evidence alone is sufficient to sustain a conviction. *Jones v. State* (1986), Ind., 500 N.E.2d 1166. Circumstantial evidence need not exclude every reasonable hypothesis of innocence. *Burton v. State* (1988), Ind., 526 N.E.2d 1163.

▆▆▆ Dr. Pless testified that the victim had died from drowning and that she had sustained two freshly bruised regions on the back of her head from blunt trauma, which injuries could possibly but not probably cause death. In addition, she sustained multiple bruises to her right arm, wrist, forearm and right leg, shin, and ankle. This evidence taken with the other evidence recited above was sufficient to support the verdict.

Appellant asserts that if he caused the victim's bruises, it was accidental when he returned to look for her. He claims that the evidence permits the inference that he accidentally hit her with the boat while she was in the water. However, the record reveals that appellant stated to the victim's brother and attorney that he did not strike her with the boat. The record is void of any evidence that she suffered any injuries when she was seen by others on that day. Again, the jury was to decide the weight of all the evidence presented.

Appellant also claims absence of evidence on intent, trying to emphasize the relationship between the two and good feelings between the victim and appellant that day. The record shows, however, that the relationship was not as appellant claims. The evidence of the prior attack on the victim and the fact that the victim had obtained a protective order against appellant six weeks prior to her death, coupled with the circumstances of her death, was ample evidence to support the verdict.

The trial court is affirmed.

SHEPARD, C.J. and PIVARNIK, J., concur.

DeBRULER, J., dissents with separate opinion in which DICKSON, J., concurs.

DeBRULER, Judge dissenting.

In this case, Joyce Beyers, who could not swim, fell from a boat into ice cold water and drowned. At the time, she and appellant were alone in the boat and it was dusk. Bonnie and Kenneth Meeks, who live near the water's edge, were gardening at the time, and they heard a woman's shrill voice scream three times, followed by a man's voice in despair. They then noticed a boat with a spotlight apparently searching for something in the water and called the sheriff. The body of Beyers was recovered later. Her clothing was neat and not in disarray. An autopsy revealed two deep bruises on the back of head, ten to twelve hours old, which extended down to the cranial linings, multiple fresh bruising on her right arm and leg, very little fluid in the lungs, and a BAC of .06. Pathologist Pless opined that the bruises were caused by a blunt force, which could have caused unconsciousness or death and which could have been inflicted in or out of the water or before or after unconsciousness. The State correctly concedes that reasonable persons will differ with respect to whether this proves appellant's guilt or not. In light of the close nature of this case, I would remand for a new trial on the basis of error in admitting the ex parte temporary protective order and on the claim of newly discovered evidence.

The ex parte temporary protective order stated:

> You are hereby notified that Plaintiff herein, Joyce Beyers has filed with this Court her Petition for Temporary Protective Order and that said Petition was granted on an emergency basis....

I believe the jury would receive this exhibit as the belief and opinion of a judge that appellant had in fact engaged in threats and violence against Joyce Beyers and that such misconduct on the part of appellant was so severe as to create an emergency situation. Because the order was not issued upon satisfactory proof of such misconduct, it should be inadmissible as hollow and essentially irrelevant and prejudicial. *United States v. Byrd* 7th Cir., 771 F.2d 215 (1985).

In support of the motion to correct errors, the son of appellant and Joyce Beyers has made an affidavit that on the morning before the drowning, he heard a loud noise coming from the garage. He ran out and found his mother holding the back of her head. She stated that she had fallen while attempting to put the doors on a jeep and struck the back of her head and that she needed to sit a little. He further stated in the affidavit that he had not learned about the entire nature of the injuries sustained by his mother including the fact that there were large unexplained bruises about the back of her head until after the trial. An affidavit of one Ray Davis, who was a boater on the water at the time of the drowning and who did not learn of the criminal investigation until the day after the jury returned its verdict, provides his statement that he "observed a person exit from the back of the boat. I thought they were playing around or just having fun." When these sworn statements are considered in conjunction with appellant's own statement that he was in the front of the boat when he heard her call, and in light of the testimony of the Meekses that they heard her scream three times, the defense position that she fell out of the boat by accident is substantially enhanced, and in light of the closeness of the case on the facts, a matter conceded by the State, the legal criteria, including the probability of acquittal upon retrial with this newly discovered evidence, are satisfied. *Emerson v. State* (1972), 259 Ind. 399, 287 N.E.2d 867.

DICKSON, J., concurs.