Charles Michael HATCHER, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9908–CR–426.

Supreme Court of Indiana.

Oct. 5, 2000.

Lesa Lux Johnson, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found that appellant Charles Michael Hatcher murdered his former girlfriend, Marilyn Patton. In this direct appeal, he contends that the State did not give him reasonable notice of its intent to offer evidence of prior bad acts under Indiana Rule of Evidence 404(b). This case illustrates how courts can analyze the adequacy of such notice.

**Facts and Procedural History**

Hatcher and Marilyn Patton were living together as a couple for about ten years. They had three children. Patton and the children moved away from Hatcher and into the home of Patton's mother in early October 1996.

Marilyn Patton met George Frederick on October 8, 1996, and they began dating, seeing each other three or four times a week. Frederick encountered Hatcher twice at Patton's mother's apartment. The second encounter occurred when Frederick knocked on the apartment door and Hatcher answered, saying, "I told you she don't want to see you no more, so stay away from her." (R. at 481–82.) Frederick also testified that he received a call at work from Hatcher, who stated, "[I]f I catch you together again I'll kill you both, and I won't do three years." (R. at 482.)

Patton asked Frederick to give her a pistol. Instead, he gave her a knife, which she carried in her purse.

On November 20, 1996, Patton and Frederick went to a nightclub. They left the club at about 11:15 p.m. and headed back to a friend's home where Patton had earlier parked her mother's car. Patton reclaimed the car and drove toward her mother's apartment.

On the same evening, Hatcher called Patton's mother several times leaving messages for Patton. The calls began about 9 p.m. and ended at about 11:30 p.m.

The next morning, Patton was found dead in her mother's car, which was parked by the side of the road. Her purse was still in the car; it contained an emergency protective order issued three weeks earlier against Hatcher.

An autopsy revealed that Patton died of multiple stab wounds. Her body had a total of fifty-three stab and incised wounds, all inflicted with a sharp object.

Hatcher filed a Motion for Notice of State's Intent to Proffer 404(b) Evidence on July 14, 1998. Eleven months later, on June 15, 1999, the State filed its Notice of Intent to Introduce Evidence. The murder trial began six days later.

As a preliminary matter, the court heard arguments regarding the reasonableness of the State's notice and the admissibility of the Rule 404(b) evidence of other crimes, wrongs, or acts listed in the notice. At trial, Hatcher objected to the State's presentation of the evidence in question, and the court overruled his objection.

Hatcher was convicted of murder and sentenced to sixty-five years.

**I. Indiana Rule of Evidence 404(b)**

Hatcher argues that the trial court erred in admitting evidence of prior threats Hatcher made to Patton, evidence of violence in their relationship, and the emergency protective order Patton obtained against Hatcher. (Appellant's Br. at 5.) He characterizes this error as a violation of Rule 404(b), which states:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is *not admissible to prove the character of a person in order to show action in conformity therewith.* It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon

request by the accused, the prosecution in a criminal case shall provide *reasonable notice in advance of trial,* or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

(Emphasis added.)

*A. 404(b) Notice.* Hatcher first claims that the State's notice of intent to submit certain 404(b) evidence, six days before trial, did not comply with the reasonable notice provision in Rule 404(b). Hatcher also mentions that "no good cause [was] shown by the [S]tate" for failing to give earlier notice. (Appellant's Br. at 5–7.)

 Reasonable notice of intent to offer evidence of other crimes, wrongs, or acts is a prerequisite for admissibility. *Abdul–Musawwir v. State,* 674 N.E.2d 972, 975 (Ind.Ct.App.1996)(citing *United States v. Barnes,* 49 F.3d 1144, 1147 (6th Cir. 1995)). The defendant has the burden to make a "reasonably understandable and sufficiently clear" request for such notice from the State. *Id.* Moreover, a defendant who is not given notice after making a proper request must object to the State's 404(b) evidence at trial to preserve any error for appeal.[1] *Abdul–Musawwir,* 674 N.E.2d at 975 (citing *Butler v. State,* 622 N.E.2d 1035, 1041 (Ind.Ct.App.1993)). Hatcher did both.

 As the Court of Appeals has observed, there is no "'hard and fast' rule governing the time period in which the State should respond to an appropriate request under 404(b)." *Dixon v. State,* 712 N.E.2d 1086, 1091 (Ind.Ct.App.1999).[2] The reasonableness of the State's notice is not merely a function of its relation in time to either the defendant's request for notice or the date of trial. Determining whether the State's notice was reasonable requires an examination of whether the *purpose* of the notice provision was achieved in light of the circumstances of a particular case.[3] The purpose of the reasonable notice requirement in Rule 404(b) "is to reduce surprise and to promote the early resolution of questions of admissibility." *Abdul–Musawwir,* 674 N.E.2d at 975 (citing *United States v. Long,* 814 F.Supp. 72, 73 (D.Kan.1993)).

The State's notice indicated it intended to offer evidence that "the victim sought and was granted an emergency protective order against the defendant in October 1996. The defendant had threatened to kill the victim in the [sic] October 1996 and November 1996. Their relationship had times of violence." (R. at 94.) The notice also indicated the State's intent to call six named witnesses to testify about 404(b) issues.

Hatcher was not surprised by this evidence. The record indicates that the emergency protective order and evidence relating to Hatcher's threats to the victim, and the violence in their relationship, were previously disclosed to Hatcher through the discovery provided by the State.[4] (R.

---

1. However, "If notice of the intent to use 404(b) evidence were so crucial to a fair trial as to implicate due process considerations and constitute fundamental error, waiver would not result from such procedural defects." *Abdul–Musawwir,* 674 N.E.2d at 976.

2. While no set rule governs when notice must be given in order to be reasonable, in *United States v. French,* 974 F.2d 687, 694–95 (6th Cir.1992), *cert. denied,* 506 U.S. 1066, 113 S.Ct. 1012, 122 L.Ed.2d 160 (1993), the Sixth Circuit held that the trial court did not abuse its discretion by regarding notice one week before trial as reasonable.

3. In *Dixon,* the court stated that "the circumstances of the particular case should govern whether the advance notice provided by the State to defense counsel is reasonable." 712 N.E.2d at 1091.

4. The emergency protective order was initially found in the victim's purse at the time the victim's body was discovered. On August 21, 1998, the State indicated in its Supplemental Notice of Discovery Compliance that a photo of the contents of Patton's purse may be used as an exhibit at trial. The State's Supplemental Notice of Discovery Compliance filed on September 14, 1998, contained as an item the transcript of answering machine messages.

at 164–65.) As for the witnesses named in the notice and called to testify, each name also appeared as a State's witness in the information filed on July 10, 1998. Hatcher acknowledged that he had also received statements from three of these witnesses.

Similarly, the six-day notice given to Hatcher was sufficient to promote the early resolution of questions of admissibility. As a preliminary matter, the trial court heard Hatcher's objections and argument regarding the reasonableness of the State's notice and the admissibility of each item and witness contained in the notice, "one at a time." (R. at 161–66.) During this hearing, the State provided a summary of each witness' testimony.

In these circumstances, the trial court was warranted in finding that the State's six-day notice was reasonable.

**B. 404(b) Evidence.** Hatcher next claims that the State's offer of the emergency protective order obtained by Patton against Hatcher did not have an acceptable purpose according to Rule 404(b).[5] (Appellant's Br. at 7.) Such evidence may be admissible to prove such things as motive, intent, and identity. Ind. Evidence Rule 404(b).

In *Charlton v. State*, 702 N.E.2d 1045, 1049 (Ind.1998), we said:

When a defendant objects to the admission of evidence on the grounds that it would violate Rule 404(b), the following test is applied: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative

value of the evidence against its prejudicial effect pursuant to Rule 403.

This test is applied to ensure that the jury was "precluded from making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct." *Id.* at 1050 (quoting *Thompson v. State*, 690 N.E.2d 224, 233 (Ind.1997)).

The emergency protective order was relevant to motive and the history of Patton's relationship with Hatcher. As the State indicated, the existence of the protective order "goes to show the victim's fear, and the fact that they had difficulties." (R. at 168.)

We have previously held that a protective order may be admitted to indicate motive. *See Fox v. State*, 560 N.E.2d 648, 651 (Ind.1990)(trial court did not abuse its discretion in admitting temporary protective order for purpose of proving defendant's motive). In *Fox*, we also stated that "evidence of motive is relevant in the proof of a crime." *Id.* We have even held that testimony indicating that a victim wanted to obtain a protective order against the defendant was admissible "to show the defendant's motive for committing murder and not to create an inference that defendant acted in conformity with his prior bad acts." *Charlton*, 702 N.E.2d at 1050.

Next, we examine Hatcher's claim that unfair prejudice flowing from admitting the protective order substantially outweighed its probative value for an abuse of discretion. *Id.*[6] The protective order was "relevant to show the hostile relationship that existed between defendant and the victim in order to prove motive for the murder." *Id.* Patton feared for her safety and sought protection against "being

---

**5.** Note, Hatcher generally asserts that the trial court erred "in admitting the objectionable evidence applying Indiana Evidence Rule 404(b)." (Appellant's Br. at 7.) However, in his brief, Hatcher only discusses his objection to the admissibility of the emergency protective order. Therefore, his objections to other 404(b) evidence are waived. Ind. Appellate Rule 8.3(A)(7).

**6.** Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

abused or threatened with abuse" by Hatcher. (R. at 353; State's Exh. 40.) The fact that the protective order was found in Patton's ·purse near her dead body tends to increase the importance of the evidence.

The protective order, unlike the petition for the order, did not contain Patton's allegations as to why the order was needed. Rather, the order instructed Hatcher to refrain from "abusing, harassing or disturbing the peace of [Patton] by either direct or indirect contact...." (*Id.*) The State presented other evidence that was far more damaging to Hatcher. George Frederick testified that Hatcher threatened to kill both Frederick and Patton if Hatcher caught them together again. The State also presented an audio tape and a transcription of the tape containing demands and threats Hatcher made to Patton.[7] In light of this and other damaging evidence, we conclude the trial court did not err in admitting the emergency protective order.

## II. Admissibility of Autopsy Photographs

■ Hatcher also argues that the trial court erred when it admitted into evidence eight autopsy photographs of Patton's body. (Appellant's Br. at 9.) He challenges the admission of the photographs on the basis that they were cumulative and inflammatory.

■ "Autopsy photographs are admissible if (1) they provide relevant evidence, and (2) their probative value is not substantially outweighed by their tendency to impassion the jury against the defendant." *Malone v. State,* 700 N.E.2d 780, 783 (Ind.1998). "We review the trial court's admission of photographic evidence for an abuse of discretion." *Turben v. State,* 726 N.E.2d 1245, 1247 (Ind.2000).

The eight photographs depict a total of fifty-three stab and incised wounds inflict-ed with a sharp object on nearly every area of Patton's body. The pathologist testified that the several pictures would aid his testimony regarding the location, clustering and relative size of the wound openings in the skin. This was a relevant and appropriate purpose. *See Harrison v. State,* 699 N.E.2d 645, 647 (Ind.1998)(photographs are generally relevant if they depict a victim's injuries or illustrate a witness' testimony).

The probative value of the eight autopsy photographs is not substantially outweighed by their tendency to impassion the jury against the defendant. Although some overlap exists, each photograph shows a different view of the several wounds ranging from Patton's head to her lower leg. The photos do not depict the body, or the wounds, in an altered or gruesome state. No error here.

## III. Admissibility of Hearsay

■ Finally, Hatcher contends that the trial court erred in admitting testimony by Camilla Jackson regarding Patton's stated fear that Hatcher would kill her. (Appellant's Br. at 10.) Hatcher objected on grounds that the statement was hearsay and irrelevant.

At trial, Camilla Jackson testified that she heard Patton tell a police officer that "she was scared that [Hatcher] was going to kill her." (R. at 418.) Jackson indicated that on October 30, 1996, she called the police when Hatcher came to her home, knocked on the door, and demanded to talk to Patton, who was hiding in Jackson's bathroom with her son.

■ The trial court allowed Jackson's testimony as an exception to the hearsay rule which permits,

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not

---

7. One message from Hatcher stated, "I'm fed up. I'm through talking. You have to do what you got to do and I got to do what I got to do. Now believe me. I can get you before you can get me." (R. at 435.)

including a statement of memory or belief to prove the fact remembered or believed unless it related to the execution, revocation, identification, or terms of declarant's will.

Ind. Evidence Rule 803(3). We review a trial court's hearsay ruling for an abuse of discretion. *Ross v. State*, 676 N.E.2d 339, 345 (Ind.1996).

We have noted three situations where such testimony is admissible: (1) to show the intent of the victim to act in a particular way, (2) when the defendant puts the victim's state of mind in issue, and (3) sometimes to explain physical injuries suffered by the victim. *Taylor v. State*, 659 N.E.2d 535, 543 (Ind.1995). We decline the State's invitation to extend this list to include the admissibility of a victim's state of mind to show the nature of the relationship between the victim and the defendant. (*See* Appellee's Br. at 12.) Although the nature of the relationship may be relevant to show motive, we recently observed that motive does not constitute an exception to the hearsay rule. *Willey v. State*, 712 N.E.2d 434, 443 (Ind.1999).

Jackson's statement was hearsay offered to prove the truth of the matter asserted, that Patton was afraid that Hatcher would kill her.[8] The trial court abused its discretion by admitting it under Rule 803(3).

 Nevertheless, "[w]e disregard error in the admission of evidence unless it affects the substantial rights of a party." *Id.* at 444 (citing Ind. Trial Rule 61). In light of the other evidence in this case regarding Patton's fear of Hatcher, including the emergency protective order, the erroneous admission of Jackson's testimony was harmless error. Its probable impact on the jury was sufficiently minor so as not to have affected Hatcher's substantial rights. *See id.*

8. Hatcher incorrectly states in his appellate brief that the truth of the matter asserted was that Hatcher killed Patton. (Appellant's Br. at 11.) Rather, the assertion made by the declarant was that she was *afraid* of being killed by Hatcher.

## Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.