

FILED

Mar 29 2017, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeremiah Edward Erickson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 29, 2017 <br><br> Court of Appeals Case No. <br> 82A01-1608-CR-1853 <br><br> Appeal from the Vanderburgh <br> Circuit Court <br><br> The Honorable David D. Kiely, <br> Judge <br><br> Trial Court Cause No. <br> 82C01-1511-F3-6956 |

**Robb, Judge.**

# Case Summary and Issues

Following a jury trial, Jeremiah Erickson was convicted of dealing in a Schedule IV controlled substance, a Level 3 felony, and the trial court sentenced him to fourteen years in the Indiana Department of Correction. Erickson now appeals, raising three issues for our review, which we consolidate and restate as: (1) whether the trial court abused its discretion in admitting evidence, and (2) whether Erickson's sentence is inappropriate in light of the nature of the offense and his character. Concluding the trial court did not abuse its discretion in admitting evidence and Erickson's sentence is not inappropriate, we affirm his conviction and sentence.

# Facts and Procedural History

On September 23, 2015, while on assignment in Mexico City, Mexico, a special agent with the Drug Enforcement Administration ("DEA") received information from a confidential informant ("CI") that a package containing 250 Roxicodone pills was being delivered to him in Mexico City via Evansville, Indiana. At the time, the special agent was investigating a source of illegal pharmaceutical drugs emanating from a person they believed to be located in India. The CI negotiated with the target in India and learned his shipment would be sent from Evansville. The CI provided the special agent with the package's tracking number, and shortly thereafter, she contacted the United States Postal Inspector's Office to inquire into the package's whereabouts. The Postal Inspector confirmed the tracking number was valid and informed her the

package was currently in transit in Louisville, Kentucky. The special agent then requested the package be detained in Louisville and contacted the DEA's office in Evansville.

[3] After alerting the local law enforcement authorities about the package, the special agent obtained the CI's written consent to search the package and forwarded it to the DEA's office in Evansville and to the Postal Inspector's Office in Louisville. A search of the package revealed 120 pills in blister packs labeled "Oxycodone." Transcript, Volume II at 45, 47. Further analysis of the pills revealed they were not Oxycodone, but were pills containing acetaminophen and tramadol.[1] The return address on the package listed "Johnny Tramoan" of "18 Surainos Blvd., Evansville, IN" as the sender; the package also listed a phone number. Tr., Vol. II at 14.

[4] An investigation conducted by Detective James Budde of the Vanderburgh County Sheriff's Office revealed the name and return address listed on the package were fake; however, the phone number was not. In two recorded conversations, Detective Budde, while pretending to be the CI's associate, called the phone number to inquire about the package. In the first recorded phone call, Detective Budde informed the person on the phone that he was sent to Evansville to set up another purchase of 1,000 pills. During this call, the person on the phone referred to a "Dude from India," "blisters," and the fact

---

[1] Tramadol is a prescription pain medication and a Schedule IV controlled substance. *See* Ind. Code § 35-48-2-10(g). By contrast, oxycodone is a Schedule II controlled substance. *See* Ind. Code § 35-48-2-6(b)(1)(O).

the pills were "supposed to be blue." Tr., Vol. III at 63, 65. In the second recorded call, Detective Budde arranged a meeting to pick up the 1,000 pills and the person on the phone referred to himself as "Jeremiah" or "Johnny or Jerry." *Id.* at 68. Erickson later appeared at the scheduled meeting. During this meeting, he admitted to sending the package and asked Detective Budde, who was still acting in an undercover capacity, to relay to the CI that he was not aware the pills were fake when he sent them. Erickson was arrested shortly following this arranged meeting.

[5] On November 11, 2015, the State charged Erickson with dealing in a Schedule IV controlled substance, a Level 3 felony. On March 30, 2016, Erickson filed a motion to suppress evidence, which the trial court denied following a hearing. Erickson also filed a motion, pursuant to Indiana Evidence Rule 404(b), requesting notice of any crimes, wrongs, or other bad acts the State intended to put forth at trial. At trial, Erickson objected to the admission of both recordings of the phone calls Detective Budde made, alleging he had not been given proper notice of their use and their admission was in violation of the Indiana Rules of Evidence. The trial court overruled his objection and the recordings were admitted into evidence and published to the jury. The jury found Erickson guilty as charged and the trial court sentenced him to fourteen years in the Indiana Department of Correction. Erickson now appeals.

# Discussion and Decision

# I. Admission of Evidence

## A. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). We review its rulings for abuse of discretion, which occurs only if the decision was clearly against the logic and effect of the facts and circumstances. *Id.*

## B. Admission of Drug Evidence

Erickson first argues the search of the package violated the Fourth Amendment to the United States Constitution. Although Erickson originally challenged the admission of the evidence through a motion to suppress, he now challenges the admission of that evidence at trial. Therefore, the issue is appropriately framed as whether the trial court abused its discretion in admitting the evidence. *See Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014). However, the ultimate determination of the constitutionality of a search or seizure is a question of law we consider de novo. *Id.*

The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. A warrantless search or seizure is per se unreasonable, and the State bears the burden to show that one of the "well-delineated exceptions" to the warrant requirement applies. *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).

[9] Erickson argues he retained a legitimate expectation of privacy in the package placed in the mail and the mid-transit search violated his Fourth Amendment rights because a government agent may not give valid consent.[2] The State counters that the special agent obtained the CI's consent, therefore, the warrantless search is valid.

[10] Sealed packages sent through the mail are entitled to full protection under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984) ("Letters and other sealed packages are in the general class of effects in which the public at large has a legitimate expectation of privacy; warrantless searches of such effects are presumptively unreasonable"); *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970) (noting first class mail, such as letters and sealed packages, is protected from inspection except in the manner provided by the Fourth Amendment). Therefore, absent a warrant or the application of a warrant requirement exception, the search will be held invalid.

[11] One such exception to the warrant requirement is when the government obtains a valid consent to search. *See Best v. State*, 821 N.E.2d 419, 429 (Ind. Ct. App. 2005), *trans. denied*. Initially, we note the CI also had both a possessory and privacy interest in the package. *See United States v. Hernandez*, 313 F.3d 1206, 1209 (9th Cir. 2002) (noting an addressee also has both a possessory and privacy interest in a mailed package), *cert. denied*, 538 U.S. 1023 (2003); *United*

---

[2] In this case, the CI was compensated by the DEA for his services and the parties do not dispute he acted as an agent of the government.

*States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) (noting an addressee has a privacy interest in a mailed package); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (noting an addressee also has a reasonable expectation of privacy in a mailed package). Further, in *United States v. Matlock*, 415 U.S. 164, 170 (1974), the Supreme Court of the United States held "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." Common authority is not implied from a third party's property interest; rather, common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the [joint parties] has the right to permit the inspection . . . [and] might permit the [effects] to be searched." *Id.* at 171 n.7.

[12] Although the common authority doctrine in *Matlock* has often been applied to warrantless searches of homes and other premises, the Supreme Court also noted a third party can have common authority over "effects." *Id.* at 170. In *United States v. Aldridge*, 642 F.3d 537, 543 (7th Cir. 2011), the Seventh Circuit Court of Appeals applied this principle and found the defendant's wife had common authority to consent to a search of a box containing documents, which the defendant had given to his wife with instructions to destroy the documents. The court determined the defendant conferred joint custody over the box and its contents to his wife when he gave it to her unlocked and informed her of its contents. *Id.* Similarly, by sending a package to another with the expectation

that the recipient will receive and open it, the sender submits to the recipient's common authority—if not exclusive authority—over the package.[3]

[13] Moreover, the Fourth Circuit Court of Appeals addressed a similar case in *United States v. Williams*, 106 F.3d 1173 (4th Cir. 1997), *cert. denied*, 522 U.S. 847 (1997). In that case, a confidential informant made three separate DEA-monitored purchases of methamphetamine by mail from the defendant. The defendant mailed the methamphetamine packages to the informant at a post office box under the control of the DEA. The defendant argued the agents' warrantless search of the packages violated his Fourth Amendment rights. The Fourth Circuit rejected this argument, holding,

> We are of opinion that the admission of the contents of the three envelopes did not constitute error at all, much less plain error. Even assuming [the defendant] had standing to challenge the admissibility of the envelopes, the record indicates that [the informant's] consent was implied from his conduct during the investigation. [The informant] had the right to open, or give consent to open, the envelopes because they were addressed to him. Also at this time, [the informant] . . . and the Task Force agents who actually opened the packages were cooperating. [The informant] had agreed to buy methamphetamine using government money. . . . We believe this evidence of the relationship between [the informant] and the Task Force agents establishes [the informant's] implied consent. Accordingly, the

---

[3] This conclusion is further supported by the fact that, in this case, Erickson used a fictitious name and address. *See United States v. Pitts*, 322 F.3d 449, 456 (7th Cir. 2003) (holding defendant abandoned package by placing it into the stream of mail without a real name or address, and without any legitimate way of retrieving it; therefore, it received no Fourth Amendment protection), *cert. denied*, 540 U.S. 849 (2003).

> agents' search of the packages did not violate [the defendant's]
> constitutional rights as sender of the package.

*Id.* at 1177-78.[4]  Likewise, the CI here was working with the DEA when he purchased Roxicodone.  The CI negotiated the deal, instructed the pills to be shipped to his address in Mexico City, and supplied the special agent with tracking numbers once they were shipped.  Further, the special agent obtained the CI's written consent to search the package and forwarded it to all relevant authorities.  We conclude the CI had common authority over the package and validly consented to its search.[5]  Therefore, there is no Fourth Amendment violation and the trial court did not abuse its discretion in admitting the drugs into evidence.

---

[4] Erickson asserts *Williams* is distinguishable because "the package in question [in *Williams*] reached its destination . . . [t]herefore, the defendant lost his expectation of privacy in the package."  Reply Brief of Appellant at 9.  As we have already noted, like Erickson, the CI had common authority over and a privacy interest in the package.  Further, we note where and when the package was searched did not figure into the Fourth Circuit's analysis of whether the informant could consent to the search.  Therefore, we find unpersuasive Erickson's attempt to distinguish *Williams*.

[5] Erickson cites to *State v. Thomas*, 642 N.E.2d 240, 246 (Ind. Ct. App. 1994), *trans. denied*, and asserts a government agent may never consent to a search.  Although *Thomas* certainly contains that language, the genesis of this stated principle is traced back to *Coolidge v. New Hampshire*, 403 U.S. 443, 487-90 (1971), and we disagree that *Coolidge* categorically states a government agent may never consent to a search.  In *Coolidge*, after police officers arrested the defendant, they returned to his home and questioned his wife.  The wife, upon the direction and request of the officers, voluntarily produced her husband's clothes and guns.  The question before the Court was whether the wife "must be regarded as having acted as an 'instrument' or agent of the state when she produced her husband's belongings" such that her actions were their actions, thus implicating the Fourth Amendment.  *Id.* at 487.  Ultimately, the Court concluded the wife was not an agent of the government; therefore, the Fourth Amendment did not apply to her actions.  *Id.* at 489-90.  The *Coolidge* Court's concern appears to have been the officers' ability to "coerce or dominate [the wife], or . . . direct her actions by the more subtle techniques of suggestion . . . ."  *Id.* at 489.  We think it is an entirely different situation when a confidential informant voluntarily offers information and consents to the search of a package addressed to him.  Moreover, as the Court never deemed the wife to be an agent of the government, we disagree *Coolidge* created a brightline rule that a government agent may never consent to a search.

# C. Admission of Audio Recordings

[14] Erickson also contends the trial court abused its discretion in admitting the two audio recordings between Detective Budde and the person whose phone number was listed on the mailed package. Erickson makes three arguments with regard to the recordings. He argues (1) the State failed to give proper notice of its intent to introduce evidence of Erickson's prior "bad acts"; (2) the recordings should have been excluded pursuant to Indiana Rule of Evidence 404(b); and (3) the evidence should have been excluded pursuant to Indiana Rule of Evidence 403.[6]

## 1. Notice

[15] Erickson asserts the two audio recordings qualify as "bad acts" pursuant to Indiana Rule of Evidence 404(b); therefore, the State was required to give notice of their intent to offer that evidence at trial. Rule 404(b) states:

> (1) *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses; Notice in a Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

---

[6] Because we address Indiana Rule of Evidence 403 under subsection "2. Indiana Rule of Evidence 404(b)" below, we do not separately address Erickson's third argument concerning Rule 403.

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

Erickson maintains the trial court abused its discretion by permitting the State to introduce the audio recordings without giving notice as required by the rule. In *Hatcher v. State*, our supreme court stated "there is no hard and fast rule governing the time period in which the State should respond to an appropriate request under 404(b)."  735 N.E.2d 1155, 1158 (Ind. 2000) (citation and internal quotation omitted).  Therefore, the reasonableness of the State's notice does not turn on its relation in time to either the defendant's request for notice or the date of trial; rather, the reasonableness of the notice requires an examination of whether the *purpose* of the notice provision was achieved based upon the circumstances of a particular case.  *Id.*  The purpose of the notice requirement in Rule 404(b) "is to reduce surprise and to promote the early resolution of questions of admissibility."  *Id.* (citation omitted).

[16]  At the outset, we express hesitancy with Erickson's assertion that the State's act of providing the audio recordings during discovery did not constitute "reasonable notice" pursuant to Rule 404(b)(2)(A).  The purpose of discovery is to put the other party on notice of the evidence upon which a party intends to rely at trial.  *See Bennett v. State*, 5 N.E.3d 498, 511 (Ind. Ct. App. 2014), *trans. denied*.  Defense counsel was provided the audio recordings at least a month before trial and was aware of the information they contained and the likelihood

the State would want to use this information to link Erickson to the package, phone number, and phone calls.

[17] However, even assuming the State did not provide "reasonable notice," it is apparent from the record the trial court excused any lack of pretrial notice for good cause. *See* Evid. R. 404(b)(2)(B). At some point prior to or during trial, but before the State moved to admit the recordings, Erickson filed a motion in limine seeking to exclude the recordings; clearly, some notice must have been provided that the State was going to introduce the recordings at some point at trial. Before the start of the second day of trial, the trial court heard, outside of the presence of the jury, Erickson's objections and argument regarding the admissibility of the recordings as they pertain to Rule 404(b). The trial court noted and defense counsel acknowledged the audio recordings were provided to defense counsel at least a month before trial. Consequently, because defense counsel was not surprised by the evidence and was afforded an opportunity to resolve the questions of admissibility, we cannot find that the trial court's evidentiary ruling regarding the notice provision of Rule 404(b) was clearly against the logic, facts, and circumstances presented. *See Dixon v. State*, 712 N.E.2d 1086, 1093 (Ind. Ct. App. 1999) (rejecting the argument evidence is inadmissible for failure to provide notice pursuant to 404(b) where defendant has failed to demonstrate prejudice).

## 2. *Indiana Rule of Evidence 404(b)*

[18] Erickson also asserts because the two recordings undisputedly demonstrate the person on the phone arranging a future sale of a controlled substance with

Detective Budde, an illegal transaction for which Erickson was not charged, they should have been excluded as a "crime, wrong, or other act" under Rule 404(b). Ind. Evidence Rule 404(b).

[19] As noted above, Rule 404(b) prohibits the State from presenting evidence of a person's "crime, wrong, or other act" to the extent it is used to prove a person's character and demonstrate on a particular occasion a person acted in accordance with that character. *Id.* The purpose of the rule is to protect against the "forbidden inference—that the defendant acted badly in the past, and that the defendant's present, charged actions conform with those past bad acts . . . ." *Nicholson v. State*, 963 N.E.2d 1096, 1099-100 (Ind. 2012) (citation omitted). However, evidence of crimes, wrongs, or other acts are admissible if offered for another purpose, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid. R. 404(b)(2).

[20] In assessing the admissibility of 404(b) evidence, we (1) determine whether the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403.[7] *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997).

---

[7] Indiana Rule of Evidence 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

[21] During opening statements, Erickson's defense counsel asserted Erickson was not the person who sent the package addressed to the CI in Mexico City. He stated,

> [N]o one is going to testify as to [Erickson] being the person who actually mailed pills from Evansville, Indiana, there won't be any testimony from the Clerk who waited on him presumably, there won't be anybody who's going to say I saw that man mail the pills or mail this package . . . . Now ultimately [law enforcement] conduct[s] an investigation, they get to the point where they believe that Mr. Erickson is, in fact, the person who mailed the pills from Evansville, Indiana, but you're not going to hear any direct evidence that he is the person that did that. I would submit to you that after we're done listening to all of the State's witnesses . . . there will be a substantial question in your mind as to whether or not Jeremiah Erickson is the guy who mailed the pills. . . . The dispute's going to be who mailed the package.

Tr., Vol. II at 7-8. As Erickson clearly placed the identity of the sender of the package as a central issue in this case, we conclude the audio recordings are entirely relevant to a matter at issue other than the defendant's propensity to deal drugs. *See Benton v. State*, 691 N.E.2d 459, 463 (Ind. Ct. App. 1998) (noting when a defendant places his or her identity at issue, it is within the trial court's discretion to admit Rule 404(b) evidence). In the recording of the first call Detective Budde made to the phone number listed on the package, the person on the phone expressed extensive knowledge about the mailed package. Specifically, he referred to a "Dude from India," "blisters," and the fact the pills were "supposed to be blue." Tr., Vol. III at 63, 65. Shortly thereafter,

Detective Budde made a second call to the same number to continue the conversation about arranging a future deal. The person on the phone, after apparently calling the CI to verify that he had in fact sent an associate to Evansville, identified himself as "Jeremiah" or "Johnny or Jerry." *Id.* at 68.

[22] Further, although we acknowledge the prejudicial effect the recordings may have had, all relevant evidence is inherently prejudicial to a defendant in a criminal prosecution, *Sanders v. State*, 840 N.E.2d 319, 323 (Ind. 2006), and we cannot say the probative value of the recordings was substantially outweighed by any prejudice to Erickson, as the recordings were of high probative value. As previously noted, the first audio recording demonstrates the person on the phone had knowledge of the package from which a reasonable jury could infer the person on the phone was the sender of the package. The person referred to a "Dude from India," "blisters," and referred to the fact the pills were not what they purported to be. Tr., Vol. III at 63, 65. The facts of this case demonstrate the DEA was investigating a source of drugs emanating from India, the pills in the package were delivered in "blister packs," and the pills were not Roxicodone, as they were supposed to be. Finally, in the second recording, the person on the phone identifies himself as Jeremiah, Johnny, or Jerry. The probative value of this evidence is clear as the defendant is Jeremiah Erickson and the name on the package listed a "Johnny Tramoan" as the sender. Tr., Vol. II at 14.

[23] We conclude the prior "bad acts" presented by the State at trial were relevant to establish Erickson's identity as the person speaking with Detective Budde on

the phone and as the sender of the package. Further, the recordings were of such high probative value to establishing his identity that any prejudice to Erickson did not substantially outweigh their probative value. Accordingly, the trial court did not abuse its discretion in admitting the audio recordings into evidence.

## II. Inappropriate Sentence

[24] Finally, Erickson requests we exercise our constitutional authority to review and revise his sentence. Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading this court his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id.* at 1225.

[25] The advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). Here, Erickson was convicted of dealing in a Schedule IV controlled substance, a

Level 3 felony. A person convicted of a Level 3 felony shall be imprisoned for a fixed term of between three and sixteen years, with the advisory sentence being nine years. Ind. Code § 35-50-2-5(b). The trial court sentenced Erickson to fourteen years executed in the Department of Correction.

[26] As to the nature of the offense, we note Erickson participated in an elaborate scheme to illegally obtain and sell controlled substances across state and international borders. As to his character, Erickson's criminal history is extensive. Erickson has been convicted of nine offenses (including his current offense), four of which are felonies, and has also violated his probation once resulting in the revocation of his probation. Although only one of Erickson's prior offenses relate to his current offense, *see Harris v. State*, 897 N.E.2d 927, 930 (Ind. 2008) (noting the significance of a defendant's criminal history varies based upon the gravity, nature, and number of prior offenses in relation to the current offense), his consistent contacts with law enforcement and the judicial system exhibit a disregard for the law and an inability or unwillingness to abide by it. Further, contrary to Erickson's assertion he acted as an "intermediary for a single package of 120 pills of Tramadol[,]" Brief of Appellant at 41, the facts demonstrate Erickson was entirely willing to arrange another transaction to sell a substantial amount of a controlled substance to Detective Budde. Simply put, nothing about the nature of the offense or Erickson's character persuades us his sentence is inappropriate.

# Conclusion

[27] The trial court did not abuse its discretion in its evidentiary rulings and Erickson's sentence is not inappropriate in light of the nature of the offense and his character. Therefore, we affirm his conviction and sentence.

[28] Affirmed.

Kirsch, J., and Barnes, J., concur.