## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2017, 6:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Robert Shelton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 24, 2017

Court of Appeals Case No.
49A02-1703-CR-581

Appeal from the Marion Superior Court

The Honorable Stanley E. Kroh, Magistrate

Trial Court Cause No.
49G03-1607-F3-28376

**Crone, Judge.**

# Case Summary

[1] While on parole for a rape conviction, Robert Shelton grabbed a woman's purse and punched her in the face and head several times when she refused to let go of it. The State charged him with level 3 felony attempted robbery and alleged that he was a habitual offender based on two prior robbery convictions. A jury found him guilty of attempted robbery, and he admitted to being a habitual offender. The trial court sentenced him to fourteen years for the attempted robbery, enhanced by sixteen years for his habitual offender status, for an aggregate sentence of thirty years executed.

[2] On appeal, Shelton asks us to reduce his sentence, claiming that it is inappropriate in light of the nature of the offense and his character. Shelton minimizes the seriousness of the offense and his criminal history and has failed to carry his burden of persuading us that his sentence is inappropriate. Therefore, we affirm.

# Facts and Procedural History

[3] Shortly after 10:00 a.m. on July 22, 2016, Emily Longnecker arrived at a downtown Indianapolis shopping center to pick up some dry cleaning. She was getting out of her car with her purse in her hand when she was approached by Shelton, who had been released on parole for a rape conviction three months earlier. He said, "Ma'am, can I ask you something?" Tr. Vol. 2 at 39. Longnecker had been asked for money by people making similar requests, and she replied, "Sorry, sir, I don't have any money today on me, just credit." *Id.*

Shelton repeated his question, and Longnecker repeated her answer. Shelton then grabbed Longnecker's purse, and she "grabbed back" and engaged in "a tug of war[.]" *Id*. at 40. Shelton said, "Give me your money. I know you have money." *Id*. at 41. Longnecker wrested her purse from Shelton, who punched her "four or five times" in the face and head. *Id*. Longnecker screamed, and Shelton ran around the front of her car. She chased him down the street, and eventually he was caught and restrained by bystanders. A police officer arrived and arrested Shelton. Longnecker's face "was throbbing for a few hours afterwards[,]" and she suffered some bruising and a daylong headache despite receiving a shot "for the pain in [her] head and [her] face" at an urgent care center. *Id*. at 47, 48.

[4]  The State charged Shelton with level 3 felony attempted robbery and alleged that he was a habitual offender based on two prior robbery convictions. A jury found Shelton guilty of attempted robbery, and he admitted to being a habitual offender. At the sentencing hearing, the trial court found several aggravating factors (including Shelton's criminal history and his commission of the crime while on parole "for a very serious offense") and several mitigating factors (including Shelton's upbringing, drug addiction, and apology to Longnecker at the hearing). *Id*. 179. The court found that the aggravators outweighed the mitigators and that Shelton's actions justified "a sentence well above the advisory[.]" *Id*. at 181. The court sentenced Shelton to fourteen years for the attempted robbery, enhanced by sixteen years for his habitual offender status,

for an aggregate sentence of thirty years executed. Shelton now appeals his sentence.

## Discussion and Decision

"Article 7, Section 6 of the Indiana Constitution authorizes this Court to independently review and revise a sentence imposed by the trial court." *Neville v. State*, 976 N.E.2d 1252, 1266 (Ind. Ct. App. 2012), *trans. denied* (2013). Shelton asks us to reduce his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find "that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "[W]e must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). The principal role of appellate review of sentences should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "[A]ppellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*.

Whether we regard a sentence as appropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to

others, and myriad other factors that come to light in a given case." *Id*. at 1224. "When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended." *Prater v. State*, 59 N.E.3d 314, 318 (Ind. Ct. App. 2016). "[T]he question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). "The defendant has the burden of persuading us that his sentence is inappropriate." *Id*. at 267.

[7] The advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Erickson v. State*, 72 N.E.3d 965, 975 (Ind. Ct. App. 2017), *trans. denied*. The sentencing range for a level 3 felony is three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). If, as in Shelton's case, a person convicted of level 3 felony attempted robbery has a prior unrelated felony conviction, the trial court may suspend only that part of a sentence that exceeds the minimum sentence. Ind. Code § 35-50-2-2.2(b). Shelton's sentence for attempted robbery was enhanced due to his habitual offender status; the range for such an enhancement is six to twenty years, none of which may be suspended. Ind. Code § 35-50-2-8(i). Thus, Shelton could have been sentenced from as few as nine to as many as thirty-six years, only some of which could have been suspended.

[8]     Regarding the nature of the offense, Shelton claims that he "did little if anything beyond the minimum necessary to meet the requirements" of level 3 felony attempted robbery. Appellant's Br. at 12. Robbery is the knowing or intentional taking of property from another person by using or threatening the use of force on any person. Ind. Code § 35-42-5-1(a). "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). Except for murder, "[a]n attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted." *Id*. A baseline robbery (or attempted robbery) is a level 5 felony, which carries a sentencing range of one to six years and an advisory term of three years. Ind. Code §§ 35-42-5-1(a), 35-50-2-6(b). The offense is elevated to a level 3 felony if it results in bodily injury to any person other than a defendant. Ind. Code § 35-42-5-1(a). "'Bodily injury' means any impairment of physical condition, including physical pain." Ind. Code § 35-31.5-2-29.

[9]     During his attempt to take Longnecker's purse, Shelton struck her not once, but four or five times in the face and head, which caused bruising, swelling, and a headache that lasted all day despite an injection of pain medication. Moreover, as the State observes, Shelton committed the crime "in a public area and in broad daylight[,]" thereby "taking away any sense of security this victim, or any person, would have going about the city engaging in routine errands."

Appellee's Br. at 11.  Indeed, Longnecker told Shelton at the sentencing hearing,

> [W]ith that attack, you have taken some of the peace I once felt walking in this city in broad daylight and in public, in the sunshine just going about my daily life.  Some days have been a challenge, because if you're not safe in broad daylight going to the dry cleaners in a public place at 10:30 in the morning, where are you really safe?

Tr. Vol. 2 at 163.  Thus, the nature of Shelton's offense is not as "ordinary" as he would have us believe.  Appellant's Br. at 12.

[10]    As for Shelton's character, one relevant consideration is his criminal history.  *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016).  "The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense."  *Id.*  Shelton's criminal history dates back to 1987, when he was convicted of misdemeanor battery at age nineteen and class C felony robbery at age twenty.  His probation for the robbery conviction was revoked, and he was ordered to serve four years executed.  In 1989, he was convicted of class B felony robbery, for which he received a ten-year executed sentence, and class D felony theft, for which he received a two-year executed sentence.  In 1997, he was convicted of class A misdemeanor driving while suspended, for which he received a one-year suspended sentence.  That same year, he was also convicted of class B felony rape and was found to be a habitual offender for the first time.  He received a

forty-year executed sentence and was released on parole in April 2016, only three months before he attempted to rob Longnecker.

[11] The record before us supports the State's blunt assessment that "[t]he only time [Shelton] is not committing crimes is when he is incarcerated." Appellee's Br. at 13. He has a troubling history of inflicting sexual and physical violence on women and taking other people's property by force or threat of force. He has violated both probation and parole, and his prior habitual offender designation and incarcerations have failed to deter him from engaging in criminal activity. Shelton obtained several degrees and trade certifications in prison, but he failed to put them to good use after his release. According to Shelton's presentence investigation report, at the time of his arrest he was employed as a plane loader at $13.95 per hour and was "very stable" financially, which begs the question of why he attempted to steal a woman's purse in a parking lot. Appellant's App. Vol. 2 at 108. Shelton admitted to being a habitual offender and apologized to Longnecker at sentencing, but, as the trial court recognized, he was forty-nine years old and had "not been rehabilitated" despite three decades of encounters with the criminal justice system. Tr. Vol. 2 at 181. Shelton has failed to carry his burden of persuading us that his thirty-year executed sentence is inappropriate, and therefore we affirm.

[12] Affirmed.

Vaidik, C.J., and Mathias, J., concur.