## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 23 2018, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Martez Wills, *Appellant-Defendant,* v. State of Indiana, *Appellee-Plaintiff.* | March 23, 2018 Court of Appeals Case No. 48A04-1704-CR-933 Appeal from the Madison Circuit Court The Honorable Thomas Newman, Jr., Judge Trial Court Cause No. 48C03-1603-F1-633 |

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a jury trial, William Wills was convicted of two counts of attempted murder, a Level 1 felony; attempted robbery resulting in serious bodily injury, a Level 2 felony; battery by means of a deadly weapon, a Level 5 felony; and carrying a handgun without a license, a Class A misdemeanor. Wills also pleaded guilty to unlawful possession of a firearm by a serious violent felon, a Level 4 felony. Wills now appeals his convictions, raising the following issues for our review: 1) whether the trial court abused its discretion in admitting evidence; 2) whether there is sufficient evidence to support his convictions for attempted murder and battery by means of a deadly weapon; 3) whether Wills' convictions for attempted murder and attempted robbery violate Indiana's state constitutional prohibition against double jeopardy; and 4) whether prosecutorial misconduct occurred and whether that conduct amounts to fundamental error. Concluding any error in the admission of evidence is harmless, there is sufficient evidence to support Wills' convictions, and the prosecution did not commit misconduct, but that his convictions for attempted murder and attempted robbery resulting in serious bodily injury violate principles of double jeopardy, we affirm in part and reverse and remand in part.

# Facts and Procedural History

[2]     In March of 2016, Daniel Shannon possessed around four ounces of marijuana that he wanted to sell. Shannon's friend, Madison Thomas, connected him

with K.J. McCarter, a potential buyer. After McCarter agreed to buy the marijuana from Shannon, Thomas set up a meeting to facilitate the transaction.

[3] On March 5, 2016, the day before meeting with Shannon and Thomas to purchase marijuana, McCarter discussed the arrangement with his friend, Wills. Because McCarter owed Wills money, Wills told McCarter, "[w]e are going to rob this bi*** and your [sic] going to set it up." Transcript, Volume II at 225. McCarter agreed to text Wills the details of when and where the deal would occur so he could be present.

[4] On March 6, 2016, Shannon, Thomas, McCarter, and Wills met in a vacant rental house in Anderson, Indiana. Shannon brought the marijuana, scales, and plastic bags along. Thereafter, as Shannon began weighing the marijuana in the kitchen, McCarter grabbed the bag of marijuana from him. Several events then occurred simultaneously. Shannon immediately attacked McCarter and punched him several times in his face. Their fight ultimately left McCarter with a dislocated shoulder and he retreated to an adjacent room. While Shannon and McCarter were fighting, Wills pulled out a handgun and fired one bullet into the kitchen wall. Wills pointed the gun "up in the air" for this shot. Tr., Vol. I at 191. This caused Thomas to escape out the door and run to her car. Shannon then "wrestled" with Wills for a moment before turning to run out the door. *Id.* at 192. Wills yelled at Shannon to "give me your sh*t." *Id.* at

191. As he turned to run out the door, Wills "pistol whipped"[1] Shannon in the back of his head. *Id.* at 193. Immediately after being struck in the back of the head, Shannon heard another gunshot directly "next to [his] ear." *Id.* at 194. Shannon then, while standing on the porch outside the home, turned to face Wills. Wills pointed his handgun at Shannon's face and again said, "give me your sh*t . . . ." *Id.* Shannon responded Wills would have to "shot [sic] me in my face for it." *Id.* Wills then pointed his gun at Thomas' car and fired a shot, which struck Thomas in her collarbone. Shannon immediately jumped in the car and drove Thomas to a hospital.

[5] The next morning, McCarter fled to Georgia and stayed with his mother. McCarter remained in Georgia for a week before returning to Indiana to turn himself in. Through McCarter's jail phone calls, law enforcement learned of Wills and his involvement. Wills was arrested on March 29, 2016.

[6] The State charged Wills with two counts of attempted murder, Level 1 felonies; attempted robbery resulting in serious bodily injury, a Level 2 felony; battery by means of a deadly weapon, a Level 5 felony; and carrying a handgun without a license, a Class A misdemeanor. The State also alleged Wills to be a serious violent felon in possession of a firearm. A jury found Wills guilty as charged. Following the jury's verdict, Wills pleaded guilty to unlawful possession of a firearm by a serious violent felon. The trial court sentenced Wills to thirty-five

---

[1] By "pistol whipped[,]" Shannon meant Wills "took the butt of the gun and hit [him] in the back of the head . . . ." *Id.* at 193.

years for each count of attempted murder; twenty years for attempted robbery; four years for battery by means of a deadly weapon; and eight years for unlawful possession of a firearm by a serious violent felon. The trial court ordered Wills' two sentences for attempted murder and his sentence for unlawful possession of a firearm to run consecutively while the other sentences were concurrent for an aggregate sentence of seventy-eight years. Wills now appeals.

# Discussion and Decision

## I. Admission of Evidence

[7] Wills first argues the trial court abused its discretion in admitting evidence of text messages and phone calls from a cell phone obtained by police. We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Erickson v. State*, 72 N.E.3d 965, 969 (Ind. Ct. App. 2017), *trans. denied*. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

[8] At trial, the State introduced into evidence text messages and a call log from a phone taken from Wills. The text messages and call log purported to show Wills and McCarter setting up the arrangement to rob Shannon. First, we note Wills did not object at trial to the admission of the text messages taken from the phone. *See* Tr., Vol. III at 76. Thus, Wills has waived any error on appeal with respect to this evidence. *Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012). Moreover, any error in the admission of this evidence is harmless. Errors in the

admission of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.*

[9]     Here, McCarter, Thomas, and Shannon all positively identified Wills as the shooter. In light of this strong evidence, it is unlikely any error in the admission of these cell phone records had any impact upon the jury.

## II.  Sufficiency of the Evidence

[10]     Wills also challenges whether the State presented sufficient evidence to support his convictions for attempted murder and battery by means of a deadly weapon. In reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge witness credibility. *Leonard v. State*, 80 N.E.3d 878, 882 (Ind. 2017). We consider only the evidence and reasonable inferences supporting the verdict and will affirm a conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* Evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016).

### A.  Attempted Murders

[11]     A person commits murder by "knowingly or intentionally kill[ing] another human being." Ind. Code § 35-42-1-1(1). An "attempt" to commit a crime

occurs when a person, "acting with the culpability required for commission of the crime, . . . engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). Therefore, to obtain a conviction for attempted murder, the State was required to prove beyond a reasonable doubt that Wills engaged in conduct that constituted a substantial step toward killing Shannon and Thomas.

[12] The State must also demonstrate Wills acted with "specific intent to kill another person." *Blanche v. State*, 690 N.E.2d 709, 712 (Ind. 1998). The jury may infer an "intent to kill" from the nature of the attack, the circumstances surrounding the crime, and the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Kiefer v. State*, 761 N.E.2d 802, 805 (Ind. 2002). Discharging a weapon in the direction of a victim is substantial evidence from which a jury could infer a specific intent to kill. *Corbin v. State*, 840 N.E.2d 424, 429 (Ind. Ct. App. 2006).

[13] Wills argues the State failed to present sufficient evidence that he possessed a specific intent to kill Shannon. Specifically, Willis argues because Shannon had his back turned towards him during the second shot and could not see where he pointed the firearm, the State failed to present sufficient evidence of his intent to kill Shannon.

[14] Under the circumstances presented by this case, the State presented sufficient evidence for a jury to conclude beyond a reasonable doubt Wills intended to kill Shannon. The evidence most favorable to the verdict demonstrates that Wills

intended to rob Shannon and Thomas during a drug deal and had McCarter set up the arrangement to do so. As the deal progressed, Wills pulled out a firearm and fired a total of three shots. Wills fired the first shot into the kitchen wall. Wills then "wrestled" with Shannon and "pistol whipped" him in the back of the head before firing a shot "next to [Shannon's] ear" as he ran out the backdoor of the home. Tr., Vol. I at 193-94. The shot missed Shannon and struck the hood of Thomas' car. Wills' underlying plan to rob Shannon and Thomas, struggling with Shannon and striking him in the back of the head, and firing a weapon in Shannon's direction as he attempted to escape is sufficient evidence for a jury to conclude Wills intended to kill Shannon. *See Davis v. State*, 558 N.E.2d 811, 812 (Ind. 1990) (firing a weapon at a police officer and striking the car behind him is sufficient evidence to support an attempted murder conviction); *Brumbaugh v. State*, 491 N.E.2d 983, 984 (Ind. 1986) (firing a shotgun at a police helicopter where the bullet "whizzed" by the officer's head is sufficient evidence to affirm a conviction for attempted murder).[2]

[15] As to Thomas, Wills argues there is insufficient evidence he knew she was in the car when he fired his gun and therefore insufficient evidence of his specific intent to kill her. He bases this argument on the testimony of Detective Doug Stanton, who testified that, based on the angle of the shot that struck Thomas, it

---

[2] Wills' argument that he lacked an intent to kill because he had multiple opportunities to kill Shannon and declined to do so is simply a request to reweigh the evidence, which we cannot do. *Leonard*, 80 N.E.3d at 882.

was possible that she was ducking down in the front seat of the car.  However, Wills' argument is undercut by Shannon's and Thomas' testimony.

> [State]:      [H]e is pointing what at your face?
>
> [Shannon]:  The gun.
>
> [State]:      Okay.  He pointed the gun at your face and what happened next?
>
> [Shannon]:  He pointed it at the car and let off a round.
>
> [State]:      At that point could you see [Thomas] in the car?
>
> [Shannon]:  Yes.
>
> [State]:      And you saw [Wills] point the gun at your face and then at the car?
>
> [Shannon]:  Yes.

Tr., Vol. I at 195.

> [State]:      Did you ever see [Wills] point the gun at you?
>
> [Thomas]:   Yes in my car and in the living room.
>
> [State]:      Okay and when he pointed the gun at you when you were in the car.  Could you see him?
>
> [Thomas]:   Yeah he was on the porch.

Tr., Vol. II at 3.  Thus, there is sufficient evidence in the record to permit a jury to conclude Wills saw Thomas in the car, pointed the gun at her, and pulled the trigger.  Wills' argument to the contrary is a request to reweigh evidence, which we cannot do.  *Leonard*, 80 N.E.3d at 882.

## B. Battery by Means of a Deadly Weapon

Wills also briefly alleges there is insufficient evidence to convict him of battery by means of a deadly weapon. Specifically, he argues "[n]o medical evidence was presented by the State that Shannon was hit by the butt of a gun or any other hard object." Appellant's Brief at 13.

To convict Wills of battery by means of a deadly weapon, the State was required to prove Wills knowingly or intentionally touched Shannon in a rude, insolent, or angry manner. Ind. Code § 35-42-2-1(c). The offense is a Level 5 felony if it is committed with a deadly weapon. Ind. Code § 35-42-2-1(g)(2). A "deadly weapon" is defined as a "loaded or unloaded firearm" or a "destructive device, weapon, . . . equipment, . . . or other material that in the manner it is used, could ordinarily be used, or is intended to be used, is readily capable of causing serious bodily injury." Ind. Code § 35-31.5-2-86(a).

The evidence is undisputed Wills possessed a firearm during these events. Moreover, Shannon testified Wills used the "butt of the gun [to] hit [Shannon] in the back of the head . . . ." Tr., Vol. I at 193. This caused Shannon to bleed near the crown of his head. The statute does not require the State to present "medical evidence" and the testimony of a single victim is sufficient to support Wills' conviction for battery by means of a deadly weapon. *Brasher v. State*, 746 N.E.2d 71, 72 (Ind. 2001).

# III. Double Jeopardy

[19] Next, Wills alleges his convictions for attempted robbery resulting in serious bodily injury and attempted murder violate Indiana's constitutional prohibition against double jeopardy. We review alleged double jeopardy violations de novo. *Ellis v. State*, 29 N.E.3d 792, 797 (Ind. Ct. App. 2015), *trans. denied*.

[20] Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Two offenses are the "same offense" in violation of Indiana's double jeopardy clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). To demonstrate two challenged offenses are the same under the actual evidence test, a defendant must demonstrate a reasonable possibility the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999). We conduct our analysis by examining the evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. *Id.* There is no double jeopardy violation when the evidentiary facts establishing the essential elements of one offense establish only one or even several, but not all, of the elements of a second offense. *Spivey*, 761 N.E.2d at 833.

Wills contends the record reflects a reasonable possibility "the jury used the same evidence to support" his convictions of attempted murder and attempted robbery resulting in serious bodily injury. Appellant's Br. at 19. Specifically, Wills alleges a reasonable possibility the jury used Thomas' injury as the basis for both the serious bodily injury enhancement[3] for attempted robbery and the substantial step in the commission of the attempted murder. However, this argument, even if sustained, does not violate the *Richardson* actual evidence test because, as noted, under that test, "the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Spivey*, 761 N.E.2d at 833. The test is "*not* merely whether the evidentiary facts used to establish *one* of the essential elements of one offense may also have been used to establish *one* of the essential elements of a second challenged offense." *Id.*

Wills does not argue that the facts establishing *all* the elements of attempted murder establish *all* the elements of attempted robbery resulting in serious bodily injury. Therefore, Wills has failed to establish a violation of the *Richardson* actual evidence test.

---

[3] Indiana Code section 35-42-5-1(a) provides that "a person who knowingly or intentionally takes property from another person or from the presence of another person by using or threatening the use of force on any person or by putting any person in fear commits robbery, a Level 5 felony. However, the offense is a . . . Level 2 felony if it results in serious bodily injury to any person other than a defendant."

[23] However, as our courts have often noted, Indiana's double jeopardy jurisprudence still adheres to a series of rules of statutory construction and common law that are separate and in addition to the protections afforded by our constitution. These rules are often referred to as "Justice Sullivan's categories" because he first enumerated them in his concurring opinion in *Richardson*. *Zieman v. State*, 990 N.E.2d 53, 61 (Ind. Ct. App. 2013). One of these categories prohibits "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002). Justice Sullivan explained that "[i]n situations where a defendant has been convicted of one crime for engaging in the specified additional behavior or causing the specified additional harm, that behavior or harm cannot also be used as an enhancement of a separate crime; either the enhancement or the separate crime is vacated." *Richardson*, 717 N.E.2d at 56 (Sullivan, J. concurring). Therefore, we phrase the issue as whether there is a reasonable possibility that the jury used the same facts to establish both the substantial step element of Wills' attempted murder of Thomas and the serious bodily injury element of his Level 2 attempted robbery resulting in serious bodily injury. To determine which facts the jury used to establish each element of an offense we consider "the evidence, charging information, final jury instructions and arguments of counsel." *Boss v. State*, 964 N.E.2d 931, 937 (Ind. Ct. App. 2012).

[24] The State's charging information stated as follows:

On or about March 6, 2016, in Madison County, State of Indiana, William Martez Wills did intentionally engage in conduct that constitutes a substantial step toward killing another human being, to wit: M.T.

* * *

On or about March 6, 2016, in Madison County, State of Indiana, William Martez Wills did knowingly or intentionally engage in conduct that constitutes a substantial step toward taking property from another person or from the presence of another person, to wit: M.T. or Daniel Shannon, by using or threatening the use of force or by putting any person in fear. Further, the act resulted in serious bodily injury to M.T.

Appellant's Appendix, Volume II at 62-63. Moreover, at closing arguments, the State argued the same act and injury in support of both charges. The prosecutor argued,

On March 6th of 2016, [Wills] pointed and fired a gun at Madison Thomas. We have the bullet hole in the car windshield and the bullet hole in her chest. He pointed the gun at Daniel and then he moved the gun and pointed it at [Thomas]. . . . [Wills] did knowingly or intentionally engage in conduct that constitutes a substantial step toward taking property from another person . . . by using or threaten[ing] the use of force . . . . [Wills] tried to take the marijuana. [Thomas] had the serious bodily injury.

Tr., Vol. III at 100-01, 102-03. Based on the charging information, evidence presented at trial, and the prosecutor's argument to the jury, we conclude that there is a reasonable possibility the jury used the evidence of Thomas' injury as the substantial step element of attempted murder and the resulting serious

bodily injury element of attempted robbery, resulting in a violation of double jeopardy principles.[4]

[25] As to the proper relief in this case, we observe,

> When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. In the alternative, a reviewing court may vacate one of the convictions to eliminate a double jeopardy violation. In making that determination, we must be mindful of the penal consequences that the trial court found appropriate.

*McCann v. State*, 854 N.E.2d 905, 915 (Ind. Ct. App. 2006). The double jeopardy violation that exists here is remedied by removing the serious bodily injury enhancement of Wills' conviction of attempted robbery and reducing that conviction to a Level 3 felony. *See* Ind. Code 35-42-5-1(a) (robbery committed while armed with a deadly weapon is enhanced to a Level 3 felony). Thus, we remand with instructions to the trial court to reduce Wills' attempted robbery conviction to a Level 3 felony and to re-sentence him accordingly.

---

[4] The State argues there is no double jeopardy violation because "Wills was guilty of attempted murder regardless of whether the bullet hit Thomas. . . . Therefore, Wills was not being punished for the 'very same behavior or harm.'" Brief of Appellee at 26. However, while that may be, the bullet did strike Thomas and Wills was subsequently tried and convicted for that act and harm. *See Moore v. State*, 652 N.E.2d 53, 60 (Ind. 1995) (reducing an enhancement to a robbery conviction because the very same killing that was the basis of the enhancement was also the basis of a murder conviction).

# IV. Prosecutorial Misconduct

Finally, Wills alleges the State committed prosecutorial misconduct in closing arguments. Specifically, Wills contends the prosecution misstated evidence, commented on evidence not supported by the record, and misstated Indiana case law to the jury.

A claim of prosecutorial misconduct requires us to make the following determinations: first, we determine whether the prosecutor's conduct qualifies as misconduct, and second, whether any misconduct "placed the defendant in a position of gravel peril" to which he otherwise would not have been subjected. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). A prosecutor has a duty to present persuasive final argument and it is proper for a prosecutor to propound conclusions based on his or her analysis of the evidence. *Id.* To determine if misconduct occurred, reviewing courts look to case law and the Indiana Rules of Professional Conduct. *Id.*

A defendant alleging a claim of prosecutorial misconduct must object at trial to preserve any claim of error. *Id.* A defendant's failure to object at trial will waive any error unless the prosecutor's conduct constitutes fundamental error. *Id.* at 667-68. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to "make a fair trial impossible." *Id.* at 668 (citation omitted).

[29]     Wills failed to object to the prosecutor's closing argument at trial and has waived this argument unless fundamental error occurred. Waiver notwithstanding, we conclude no prosecutorial misconduct occurred in this case.

[30]     Wills' first allegation of misconduct states "both prosecutors argued that Wills fired the gun at Daniel Shannon as he was 'walking' or 'running' out to the car." Appellant's Br. at 16. Wills contends this was in error because there was no evidence to support these comments. Shannon testified "I guess we wrestled for a second and then umm, I released and tried running out myself." Tr., Vol. I at 192. Later in his testimony Shannon again stated that after he "wrestled" with Wills, "[he] turned around to run out of the house." Tr., Vol. I at 192. The prosecution's comments that Shannon walked or ran out of the house is a proper characterization of the evidence.

[31]     Wills also alleges the prosecution misstated evidence when it informed the jury "Wills could see Madison Thomas in the car." Appellant's Br. at 16. Shannon testified Madison was visible in her car from the back porch of the home and Thomas testified she could see Wills on the back porch from her location in the car. Moreover, Detective Doug Stanton testified there a "line of sight" from the back porch to the car because the back porch was elevated. Tr., Vol. II at 130. The prosecution's characterization of this evidence was not improper.

[32]    Finally, Wills contends the prosecutor gave the jury an incomplete statement of law regarding attempted murder. During closing argument, the prosecutor stated,

> The law in Indiana from *Perez v. State*. Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or cause pre-bodily harm. It also says discharging a weapon in a direction of a victim is a substantial evidence from which the jury could infer intent to kill.

Tr., Vol. III at 109. The prosecution later argued that "[s]pecific intent is at the moment in this case when the gun was fired. At that moment is when the attempted murder was committed." *Id.* at 130. Wills alleges this comment impacted the jury's ability to judge the evidence by leading the jury to believe simply pulling the trigger of a gun is enough to convict Wills of attempted murder.

[33]    The prosecution's statement is an accurate statement of law and does not constitute misconduct. In this case, the attempt to commit murder *did* occur when Wills pulled the trigger. The jury's duty was to determine, at the time Wills pulled the trigger, whether he had specific intent to kill Thomas and Shannon. Wills takes issue with one sentence of a prolonged closing statement in which the prosecution detailed at length the nature and circumstances under which the crimes occurred. Further, the final jury instructions informed the jury of the definition of "intent" under Indiana law and its role in adjudicating the facts of the case. The trial court instructed the jury, "[a] person engages in conduct 'intentionally' if, when the person engages in the conduct, it is the

person's conscious objective to so engage in such conduct." Tr., Vol. III at 140. The jury was also informed that "[y]ou are the exclusive judges of the evidence, which may be either witness testimony or exhibits. . . . [I]t is your duty to decide the value you give to the exhibits you receive and the testimony you hear." *Id.* at 141. We conclude Wills failed to establish any misconduct in this case.

# Conclusion

[34] We conclude any error in the admission of evidence is harmless, there is sufficient evidence to support Wills' convictions of attempted murder and battery by means of a deadly weapon, and the prosecution did not commit prosecutorial misconduct. However, we also conclude Wills' convictions for attempted murder and attempted robbery resulting in serious bodily injury violate principles of double jeopardy. Consequently, we affirm in part and reverse and remand in part with instructions to the trial court to reduce Wills' attempted robbery conviction to a Level 3 felony and to re-sentence him accordingly.

[35] Affirmed in part, reversed in part, and remanded.

Crone, J., and Bradford, J., concur.